UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARY-JO HYLDAHL,

        Plaintiff,

                                        Case Number 07-14948-BC
v.                                           Honorable Thomas L. Ludington

AT&T,

        Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART MOTION TO EXTEND SCHEDULING ORDER**

On November 19, 2007, Defendant AT&T ("Defendant") removed Plaintiff Mary-Jo Hyldahl's ("Plaintiff") case to this Court. The complaint alleges that Defendant interfered with Plaintiff's rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(1), and retaliated against Plaintiff for exercising her FMLA rights in violation of 29 U.S.C. § 2615(a)(2).

The parties agree, for the purposes of summary judgment review, that Plaintiff is able to establish a prima facie retaliation claim and that Defendant has offered a legitimate non-discriminatory explanation for terminating Plaintiff's employment. The dispute centers on whether Plaintiff has met her burden by demonstrating that Defendant's proffered justification was pretextual.

With respect to Plaintiff's interference claim, Defendant contends that Plaintiff's elective activities the day she requested FMLA leave were inconsistent with the serious health condition that made her unable to perform her work-related responsibilities. Defendant contends that Plaintiff's retaliation cause of action should be dismissed because it had an honest belief that Plaintiff was

abusing her entitlement to FMLA leave.

On November 18, the parties presented oral argument to the Court. For the reasons stated below, the Court will **GRANT** in part and **DENY** in part Defendant's motion for summary judgment.

I

On February 26, 1996, Defendant employed Plaintiff as a call service representative at a customer call center. Plaintiff's employment responsibilities included receiving telephone calls from residential customers concerning their phone service, addressing billing issues, and selling additional products. Dkt. # 15-3 at 8 (*Plaintiff's Depo.*). Plaintiff also placed sales calls to customers and undertook various clerical duties. *Id.* Plaintiff primarily worked in a cubicle with a telephone headset and a computer. *Id.* at 9.

In 1999, Plaintiff sought treatment from Anne Olsen ("Olsen"), a licensed social worker, and Dr. Kaushik Raval ("Dr. Raval"), a psychiatrist. Dr. Raval diagnosed Plaintiff with post-traumatic stress disorder ("PTSD"), stemming from childhood abuse. As a result of PTSD, Plaintiff would suffer debilitating panic attacks, symptoms of depression, and physical pain. Dkt. # 15-5 at 4 (*Dr. Raval Depo.*). Consequently, Dr. Raval recommended two to forty-eight hours of intermittent leave a month when Plaintiff experienced the symptoms. *Id.* In 2001, Plaintiff periodically requested FMLA leave to address her affliction. *Id.* at 11.

In 2003, Defendant approved forty-five of fifty FMLA requests by Plaintiff, totaling 232 work hours. Dkt. # 15-6 at 1. In 2004, Plaintiff exhausted all twelve weeks of available leave under the FMLA. *Id.* In 2005, Defendant approved all of Plaintiff's requests for leave under the FMLA. *Id.* In 2006, Defendant approved seventy-nine requests for leave, totaling over 400 hours. *Id.*

Defendant did deny Plaintiff's request for leave on December 14, 2006, because Defendant believed that Plaintiff abused FMLA leave to address preplanned personal matters that were not consistent with her PTSD affliction. On the basis of this belief, Defendant terminated Plaintiff's employment.

In July of 2006, Defendant's attendance manager, Michael Bouvrette ("Bouvrette"), suspected that Plaintiff may have been misusing her FMLA leave to extend her weekends. Dkt. # 15-7 at 1-2 (*Bouvrette Decl.*). On October 16, 2006, Bouvrette requested that Plaintiff's FMLA requests be investigated. *Id.* Dkt. # 15-9 at 2. On November 15, 2006, Mary Glass ("Glass"), Defendant's FMLA escalation support manager, requested a formal investigation after reviewing Plaintiff's pattern of requests. Defendant initiated an investigation and Defendant conducted surveillance of Plaintiff on four days when she requested leave, including December 14 of 2006. Dkt. # 15-7 at 19. The first two days of surveillance did not yield any activities inconsistent with her medical condition. *Id.* On December 12, 2006, Plaintiff indicated during an interview for a potential promotion that her regular absences would soon diminish. Dkt. # 15-9 at 3. On December 14, 2006, the surveillance investigator observed conduct that Defendant believed to be inconsistent with her PTSD or depression symptomology.

The parties agree on Plaintiff's activities on that day. Plaintiff and Defendant's investigator collaborated on the following statement describing her activities on December 14, 2006 as follows:

> At 10:28 am [sic] I leave my residence and drive approximately one hour to Shattuck Dental Center which is 41 mile [sic] from my home. At 11:31 am [sic] I enter the Dental Clinic and remain there for around two hours. I had a broken tooth, up under the gum that was causing me some pain. My treating physician for my FMLA was aware that I had this tooth condition (pain). Pain caused my "condition" to worsen, that is why I brought it to the attention of my FMLA doctor. I will provide [Defendant] with an authorization to speak to any of my treating physician [sic] to verify this information if requested to do so.
>
> This dentist appointment was billed through [Defendant's] dental plan benefits. I am

>not sure when I made this appointment with my dentist.
>
>At 2:36 [sic] I depart from the Dental Center, re-enter my vehicle and drive to Ya-Ya's Flame Broiled Chicken restaurant 2 miles away and enter the building. The dentist had recommended eating something, I needed to get nutrition. At 3:30pm [sic] I exit the restaurant, re-enter my vehicle and drive to Quizno's Subs Restaurant/Starbucks approximately 21 miles away on Main Street in Birch Run MI [sic]. I proceeded through the drive through lane and purchased a peppermint mocha coffee. I the [sic] leave the restaurant and drive approximately 21 mile [sic] to the Davison Barber shop [sic] located on Davison Rd. The Barber Shop is also attached to the Affinity Day Spa. The barber shop [sic] and day spa are two separate businesses. I had called my friend [Linda Dahl] who works at the Barber shop [sic] earlier this day and asked her if there was anything she could do to fit me in. I advised Mr. Meisnitzer that he could call Linda if he wished to verify this. I had my hair cut and colored while I was in the Barber Shop. My treating physician has told me to do whatever I need to do to keep my condition in line and hold off on my disassociative periods. He has not put any restrictions. Holidays are the most challenging time for me and The [sic] barber shop [sic] was also having their Christmas party at the same time I was getting my hair done.
>
>I remained at the Davison Barber shop until around 8:23 pm. [sic] I left the Barbershop [sic] followed by another woman, Dawn Caverly who I ran into in the barber shop. Dawn is a friend of mine who I hadn't seen in years. We left the barber shop and drove about 10 miles to Senior Lucky's Cantina. We entered the Cantina and had something to eat and drink at the bar. I am not sure what time I left the bar, but I think I drove directly home which is approximately 53 mile. [sic]

Dkt. # 15-7 at 7-8. This statement was developed during an interview on January 4, 2007. On January 8, 2007, Glass denied Plaintiff's claim for FMLA leave. *Id.* at 35. An internal e-mail, however, indicates that Defendant decided to deny Plaintiff's FMLA request for December 14, 2006 prior to the interview with Plaintiff. Dkt. # 17-12 at 1.

As part of the investigation, Glass elicited the opinion of a board certified psychiatrist, Dr. Judith Lichtenstein ("Dr. Lichtenstein"), to explain Plaintiff's medical or psychiatric circumstance and the appropriate treatment. Dkt. # 15-8 at 2 (*Glass Decl.*). Dr. Lichtenstein prepared a written report after speaking with Olsen, concluding that Plaintiff's condition, when severe, required Plaintiff to rest at home and to not operate a vehicle due to the potential for "blackouts." *Id.* The

November 8, 2006 report also concluded that Plaintiff should not conduct "home maintenance" or undertake recreational activities. Dkt. # 17-9 at 3.

Plaintiff disputes that the only appropriate medical treatment for her condition was to remain at home. Her brief asserts the following:

> During these intermittent FMLA usage periods, Ms. Hyldahl was not necessarily required to stay at home. Indeed, there were circumstances where she was encouraged to leave the home and be around others in a non-stressful setting. If Ms. Hyldahl were having frequent dissociative episodes, she was to restrict her driving. However, if she were not having dissociative episodes, but was having anxiety or other symptoms of depression, she was encouraged to be around people, talk to acquaintances, get out of the house and do her normal chores.

Dkt. # 17 at 9 (citing Dkt. # 17-4 at 14 (*Olsen Depo.* at 56)). Social worker Olsen testified that she told Dr. Lichtenstein she believed that Plaintiff's behavioral restriction should depend on the way Plaintiff perceived her symptoms. Dkt. # 17-4 at 12-13. Olsen provided the following testimony:

Q: And you also conveyed to Dr. Lichtenstein that when [Plaintiff] requested FMLA leave for her condition she should be at home resting, correct?

A: That was part of the recommendations [sic].

Q: And you also recommended that she should not be driving if she's having blackouts, correct?

A: That would have been part of the recommendation.

Q: What was the other part of the recommendation?

A: Depending on where she was and especially with her depression, depending on how depressed she was, there were times when it would have been inappropriate for her to go home and be alone.

So there would have been a recommendation to find a friend to be with or to not go home.

Q: And did you convey that to Dr. Lichtenstein, do you know?

A: Yes, I'm sure I did.

Q: Are you certain of that?

> A: Not exactly, but the conversation was –

*Id.*

On January 6, 2007, Olsen and Dr. Raval co-authored a letter concerning Plaintiff's restrictions. The letter provided as follows:

> [Plaintiff] has been diagnosed with severe [PTSD] and Major Depression. These conditions impact every area of functioning . . . Her most difficult times are when she is under increased stress, which is usually work-related or when involved with family of origin issues. She is also triggered by times of increased physical pain. The most difficult symptom we have to deal with in the entire cluster of symptoms that she lives with is a tendency to experience dissociative episodes. These are blocks of time where she loses awareness and can occur for a few minutes or an hour or longer. So you can see where stress management strategies are crucial to her successful management of her condition.
>
> \* \* \*
>
> The recommended activities that [Plaintiff] has been encouraged to engage when her symptoms rise are based on which symptoms she is experiencing. If the dissociative episodes are occurring or are threatening, she must be very careful. If she is at home [sic] she needs to stay there. If she is away from home [sic] she needs to find places and people who are supportive and caring for her so she can establish safety. Since she lives alone her social system becomes an important facet of her decisions. Even without the dissociative episodes, she is not always encouraged to stay quiet at home. Being alone can exacerbate the difficulty sometimes. Being around people who are caring and perceptive is one of her primary tools to get on top of an episode of her anxiety or depression.
>
> On the day in question leading to her present crisis, [Plaintiff] was observed in a series of activities that seem to have drawn the conclusion that she was engaging in behavior that was contrary to her FMLA approval. When I saw the series of stops and activities that were recorded for that day, I became alarmed. First of all, she has gaps in memory. This is one of the more severe symptoms she has. Then, I interpret her behavior as random and wandering. That isn't helping her at all until I note that she stopped to see a woman she has known for a long time who was a very caring relationship with [Plaintiff] and took her into her shop and cared for hair. This caring interaction as well as the distraction it provided was very helpful. As was the contact with the dentist to address her pain. [Plaintiff] has to use the people she knows who can provide the support and care she needs at the moment these issues arise.
>
> We believe that [Plaintiff's] choices on the day in question were strained but were along the lines we have recommended as she develops stress management strategies

to give her control over a severe and chronic condition.

Dkt. # 17-14 at 1-2.

On January 12, 2007, Defendant suspended Plaintiff for alleged abuse of FMLA leave. Dkt. # 15-9 at 3. Although Plaintiff was suspended for violating a fraud provision in the collective bargaining agreement, the union did not appeal the suspension. On January 19, 2007, Defendant terminated Plaintiff's employment on the basis that Plaintiff abused FMLA leave to attend a pre-scheduled dentist appointment and engage in activities inconsistent with her claim that she was unable to perform the duties of her employment. Dkt. # 15-7 at 3, dkt. # 15-9 at 3, dkt. # 17-15.

II

Under Federal Rule of Civil Procedure 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002). The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002).

III

The FMLA entitles eligible employees to twelve weeks of leave during a calendar year for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). An employer may not interfere with an employee's exercise of FMLA rights or retaliate against an employee for exercising those rights. 29 U.S.C. § 2615(a). While each claim largely relies on common facts, the inquiries are slightly different.

A

A plaintiff may demonstrate a prima facie FMLA retaliation claim through direct or indirect evidence as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001). Here, Defendant does not dispute Plaintiff's ability to establish a prima facie claim for retaliation through indirect evidence. The burden then shifts to the defendant to advance a legitimate, non-discriminatory justification for the retaliatory conduct. *Id.* If the defendant is successful, then the plaintiff must demonstrate by a preponderance of the evidence "that the articulated reason is in reality a pretext to mask discrimination." *Id.* (citation omitted). "There are three primary methods by which plaintiffs generally show pretext: by showing that the proffered reason, (1) had no basis in fact; (2) was insufficient motivation for the employment action; or (3) did not actually motivate the adverse employment action." *Joostberns v. United Parcel Servs., Inc.*, 166 F.Appx. 783, 790-91 (6th Cir. 2006) (unpublished) (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 805-06 (6th Cir. 1998)). The first method "consists of showing that the employer did not actually have cause to take adverse action against the employee based on its proffered reason, and thus, that the proffered reason is pretextual." *Id.* at 791.

If an employer is able to demonstrate that it had an honest belief regardless of the accuracy of the facts motivating the retaliatory conduct, then the plaintiff is precluded from meeting the burden by showing the proffered reason was not grounded in fact. *Id.* An employer must base its decision on "particularized facts that were before it at the time the decision was made" in order to rely on the honest belief rule. *Smith v. Chrysler Corp.*, 155 F.3d 799, 805-06 (6th Cir. 1998) (applying honest belief rule in the context of claim under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*); *see also Hoskins v. Pridgeon*, 2007 WL 1031636, *4 (W.D. Mich. April 3, 2007) (applying honest belief rule to FMLA retaliation claim).

Here, Defendant contends that it had "a good faith, reasonable suspicion that [Plaintiff] misused FMLA leave." Dkt. # 15 at 14. In light of Plaintiff's condition, the record requires sensitive analysis because her mental condition arises intermittently and varies in severity. This is not an instance where the employee suffers from a physical injury and surveillance observes physical conduct plainly inconsistent with a physical limitation. Here, the issue centers on whether Defendant's belief that Plaintiff's activities demonstrate that she abused FMLA leave was an honest belief. Plaintiff must demonstrate that the reason behind her discharge was not a good faith belief that she had misused her FMLA leave. In Plaintiff's words, the "appropriate inquiry is whether [Plaintiff] was acting consistently with her need for FMLA leave, and whether the employer had an honest belief that her actions were inconsistent with her serious health condition." Dkt. # 17 at 16.

The record supports the conclusion that Defendant had an honest belief that Plaintiff was abusing FMLA leave. First, the record demonstrates that Defendant continuously granted Plaintiff's FMLA leave requests without incident for a number of years. Second, Defendant initiated the investigation after suspecting potential FMLA abuse based upon a pattern of her use of the leave.

-9-

Third, Defendant obtained the opinion of a board certified psychiatrist, who spoke with Plaintiff's medical provider, and Defendant concluded that Plaintiff's activities were not consistent with the psychiatrist's opinion. Fourth, Plaintiff acknowledges that she attended a pre-scheduled dentist appointment. The fact that the appointment was pre-arranged reasonably indicated to Defendant that it was not an unexpected incident of physical pain. Plaintiff has not provided evidence that Defendant should reasonably have concluded otherwise. Moreover, the record also indicates that Dr. Lichtenstein's restrictions relied upon by Defendant were, for the most part, corroborated by Plaintiff's treaters. While Plaintiff's medical providers indicated in the January 6, 2007 letter that their recommended limitations differ depending on Plaintiff's day to day perception of her symptomology, they acknowledge that her decisions were "strained." Thus, the record demonstrates that Defendant based its decision on particularized facts and is entitled to summary judgment with respect to Plaintiff's retaliation claim.

B

A prima facie entitlement claim for interference with FMLA rights consists of the following elements: (1)the plaintiff was an eligible employee; (2) the defendant was a covered employer; (3) the Plaintiff was entitled to leave under the FMLA; (4) the plaintiff provided notice of her intent to take leave; and (5) the defendant denied her FMLA benefits or interfered with FMLA rights to which she was entitled. *Cavin v. Honda of America Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). Another district court summarized the applicable analysis of an interference claim as follows:

> "An employer is liable under [the interference] theory if it interferes with an employee's FMLA-created right to medical leave or to reinstatement following the leave . . . To prevail on this type of claim, an employee need only show that she was denied an entitlement under the FMLA. The issue is simply whether the employer provided its employee the entitlements set forth in the FMLA-for example, a twelve-week leave or reinstatement after taking a medical leave. The employer's

intent is irrelevant to such a claim."

*Hoskins v. Pridgeon*, 2007 WL 1031636, *4 (W.D. Mich. April 3, 2007) (citations and quotations omitted). Here, Defendant does not dispute that Plaintiff's medical ailments generally qualified her for leave under the FMLA. Rather, Defendant asserts that Plaintiff was not suffering from the effects of depression and PTSD necessitating leave on December 14, 2006. In the alternative, Defendant contends that, in the event that Plaintiff was suffering from those ailments on that date, Plaintiff's activities were inconsistent with her inability to perform the duties of her job. In support of these assertions, Defendant emphasizes that Plaintiff requested FMLA leave to attend a pre-scheduled dentist appointment. Thus, the question before the Court is whether Plaintiff's activities on December 14, 2006 indicate a factual dispute that Plaintiff indeed perceived her need for intermittent leave.

The record reflects Plaintiff's persistent history of depression and PTSD. For years, Defendant acknowledged Plaintiff's condition by approving numerous requests for FMLA leave. While Dr. Lichtenstein provided an opinion regarding Plaintiff's restrictions, Plaintiff's medical providers indicated that Plaintiff's activities on December 14, 2006 may be appropriate depending on the symptoms of Plaintiff's condition. Defendant also stresses that Plaintiff went to a pre-scheduled dentist appointment. Plaintiff testified that a broken tooth was causing physical pain, which her medical providers agree can exacerbate her condition. Defendant also points to the fact that Plaintiff's medical providers could not state whether Plaintiff's condition was debilitating on December 14, 2006. The periodic nature of Plaintiff's condition places Plaintiff in the position of determining when it is appropriate to utilize FMLA leave. Plaintiff, however, has stated that she was suffering from the effects of her condition on that day. In light of Plaintiff's undisputed afflictions

and the fact that her medical providers' opinion that those activities were intended to control her symptoms, a factual dispute remains. Thus, summary judgment with respect to Plaintiff's interference claim will be denied.

Defendant also argues that the reasoning behind the honest belief rule applies equally to the interference claim. Dkt. # 15 at 16-18. Defendant has not provided authority for the proposition that the honest belief rule applies in the context of an interference claim. In addition, Defendant's honest belief does not definitively demonstrate that Plaintiff fraudulently claimed FMLA leave on December 14, 2006; it merely demonstrates Defendant's good faith belief, from its perspective, that Plaintiff abused FMLA leave. In this context, however, Defendant must demonstrate that no factual dispute exists that the activities of December 14, 2006 indicate that Plaintiff could perform the material duties of her employment. Defendant has not met its burden.

C

The parties also filed a joint motion to amend the scheduling order. The parties request that all post summary judgment dates be continued until the resolution of the motion for summary judgment. The Court concludes that the parties have not demonstrated "good cause" that would justify an extension of all dates. *See* Fed. R. Civ. P. 16(a)(4). The Court will allow the parties to file motions in limine on or before December 9, 2008. All other dates shall remain in full force and effect.

Secondly, Plaintiff filed a supplemental brief with respect to the motion for summary judgment. Plaintiff's supplemental brief presents evidence of others employed by Defendant that allege that they were retaliated against for exercising FMLA rights. Defendant filed a response alleging that the evidence is irrelevant and that the brief should be stricken because Plaintiff did not

indicate these employees would provide testimony during discovery. The response also objects to Plaintiff's supplemental brief because Plaintiff did not seek leave of the Court to file a supplemental brief. While Plaintiff did not seek leave of the Court, it will not strike the supplemental brief. Defendant's arguments notwithstanding, Defendant's pleadings imply that Plaintiff's medical provider authorized FMLA leave without cause. Plaintiff's supplemental brief addresses this implication. Moreover, the parties advanced arguments concerning this topic during the hearing. The Court will not strike the supplemental brief or the response. In the future, Plaintiff's counsel is directed to first seek leave of the Court to file a supplemental brief.

IV

Accordingly, it is **ORDERED** that Defendant's motion for summary judgment [Dkt. # 14, 15] is **GRANTED** in part and **DENIED** in part.

It is further **ORDERED** that the parties' joint motion to amend the scheduling order [Dkt. # 19] is **GRANTED** in part and **DENIED** in part. The parties may file motions in limine on or before **December 9, 2008**. The parties shall file response briefs to motions in limine on or before **December 15, 2008**. All other dates in the scheduling order shall remain in full force and effect.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: December 4, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 4, 2008.

s/Tracy A. Jacobs
TRACY A. JACOBS